Pension Fund. We're going to begin with oral argument on behalf of the appellant, and Mr. Good morning, and may it please the court, Evan Miller for Appellant SuperValue, Inc. In this appeal, the parties all agree that SuperValue complied with the ERISA Section 4204 Safe Harbor when it sold stores to Schnucks. The parties also agree that when SuperValue later withdrew from the fund in connection with operations unrelated to the sold stores, the fund properly excluded the contribution history for the sold stores when it performed the initial step of calculating liability under ERISA Section 4211. The only issue before this court is whether the contribution history relating to the sold stores should also have been excluded when the fund performed the second step to determine withdrawal liability under ERISA Section 4219. You're asking us to incorporate 4204 into 4219. Is there a specific part of the 4219 that you're saying that the Safe Harbor provision goes into, the unit calculation or the rate calculation? Well, 4219 talks about base units and a calculation that needs to be undertaken. That involves a ten year look back to determine the high water mark. What we are saying is that the court should engage in the traditional and accepted canon of statutory construction. We're looking for a textual anchor for what you're asking for. The textual anchor within the language of 4219 itself comes from focusing on the word employer. The particular operative language in 4219 at issue in this case involves an examination of base units for which the employer had an obligation to contribute. At the time of the withdrawal, by operation of law, the employer no longer had an obligation to contribute and in connection with the assets it sold in the future. But it did during the ten year look back period? I'm sorry? But it did have that obligation during the ten year look back period? Yes, but this court's jurisprudence, particularly the Messina case, Central States v. Messina, provides that in connection with withdrawal liability analysis and the determination of an employer and what constitutes an employer, you measure that at the time of the withdrawal. So at the time of the withdrawal, by operation of law, super value no longer had an obligation to contribute in connection with the sold stores. And so that contribution history gets hived off and then in connection with the remaining contribution history, which relates to the stores that were terminated, that's the contribution history that you engage the ten year look back in Highwater. Mr. Miller, I had understood both sides. You can speak for yourself and your counterparts can answer. I had understood both sides start from several positions of agreement here. But one of which, when it narrows down to the legal issue before us, is that in the operative provision of 4219, and it's a mouthful, the Roman I, when you drill down into 4219C, that everyone agrees that there is ambiguity on the precise question before us. Am I mistaken? Now, you've got arguments about how to resolve that and why you think it should resolve in super values favor, and so does the fund on their part. But am I right at least in understanding that you both agree that Roman I in 4219 drilled down does not answer the question expressly? For super values part, we absolutely think the provision is ambiguous. I didn't think the fund thought it was ambiguous. I thought it was silent. Right, I don't think so. You're arguing silence is ambiguity, right? Yes. That's very explicit in your brief. Yes. We're arguing ambiguity, I think, in two forms, Judge Hamilton. First, yes, there is silence in the operative language of 4219. And indeed, the district court acknowledged that the operative language in 4219 does not speak one way or the other as to how the contribution history for the sold stores should be addressed. But in addition, we think consistent, again, with the jurisprudence of this circuit, that if you step back a little bit from the isolated language in 4219 and look at the related provisions, notably 4204 and 4201 and 4211, those provisions, their purpose, their language, makes it even more clear that 4219 is ambiguous. I understand that you think it would be a good idea, if the statute had been written, to accommodate your client's concerns here. Obviously, neither the arbitrator nor the district judge found language that would let them do that. One quick aside, you referred a moment ago to our jurisprudence in the Messina case. Yes. Was that in your briefs? It is. I think it's in the opening brief. It's Central States Pension Fund versus Messina. And on rebuttal, I'll get you the page. 706F3874. Cited on page 29. 29. That's right. Page 2930. Okay. I guess I understand you to be relying very heavily on the Borden case and the argument that the fund is being inconsistent between step one and step two. That's your best argument, in my view. Borden was obviously concerned about potential double recoveries by retirement funds. That seems to me, at least, to have been the whole basis driving the result, to do some pretty aggressive statutory interpretation there. My question is, you seem to be arguing, though, that as we consider the possibility of potential windfalls or double recoveries, we should also put on blinders and not pay attention to the 20-year cap on annual payments for withdrawal liability, which had a dramatic effect in reducing your client's withdrawal liability here. Correct? Well, that is correct. We don't think that the 20-year cap rule has any implication and play in how the 4219 language should be interpreted. If the Borden analysis is based on preventing windfalls, potential double recoveries, why not look a little more broadly, as the arbitrator did here, to say, you guys already knocked your potential liability down by more than $70 million here. Why should we knock it down another 10? I think that Congress, in particular in connection with the 20-year cap, seriously considered and came up with rules in the statute to address how pension funds will receive monies that are not paid by a withdrawing employer as a consequence of the 20-year cap. And let me elaborate. Back to Section 4211, this time 4211, I think, B, 4, Cap A and Cap B. They provide, taken together, that in calculating a withdrawing employer's share of unfunded vested benefits, the unfunded vested benefits will include that withdrawing employer's share of amounts that are not paid by prior withdrawing employers as a consequence of the 20-year cap. So, in other words, Judge Hamilton, the statute itself provides rules for how monies that are not part of, in this case, super values withdrawal liability as a consequence of the 20-year cap will be paid off in the future. By other employers who are withdrawing. Exactly. And as a consequence of Congress's serious consideration of that issue and coming up with rules to address that issue, we would urge that this panel not disrupt those judgments and try to read into 4219 some attempt to achieve a rough justice balance. Well, the district court and the arbitrators weren't the ones trying to read things into the statute. You guys are, right? And what I'm trying to address is understanding where Borden is coming from and how it may apply to these circumstances where your client is already, as I say, there was a quite clear paragraph from the arbitrator, page A26, page 11 of his decision, where he goes through all the ways in which your withdrawal liability has been cut down already. And where I'm struggling with is a compelling reason to imply language that's not in the statute to knock it down another 10 and shift another $10 million in potential liabilities to other employers in the plans. Well, I've provided one answer, and that addresses the 20-year cap issue. Let me provide another, which very much animated the Fourth Circuit's reasoning in Borden. The Fourth Circuit focused significantly on the interplay between 4204 and 4211 and how they work together. And in doing so, the Fourth Circuit recognized that a primary purpose in 4204 and an important legislative purpose in the withdrawal liability scheme writ large was not merely to have withdrawing employers pay their fair share, but to create rules to promote new employers coming in so that they can be long-time contributors to the pension fund and help overall funding. Right. It's an incredibly complicated statute, right? It is. Balancing an awful lot of competing policy considerations. That complexity suggests, at least to me, that we shouldn't be tinkering by trying to add language of the kind that you all think should have been in the Step 2 calculation. But as I say, I think that this court can interpret that language focusing on the text itself, and in particular this notion of who the employer is at the time of the withdrawal, in a way that easily allows for our interpretation and that, furthermore, our interpretation is consistent with and would lead to a harmonious whole that would allow the objective of 4204 and the objective of 4201 of ERISA to be given full force and to be consistent with how all parties agree 4211 should be interpreted. Mr. Miller, can I ask you a question about interpreting the plain meaning of the Roman 1, which is the first part of the multiplication that has to occur there to figure out the annual payment? Why not, if the 4204 transaction needs to be considered in the determination of employer withdrawal liability and, in particular, the computation of the payment, the annual payment, mindful of the 20-year cap, why isn't the best interpretation if super value is insisting that we need to, we cannot forget the 4204 transaction? That's basically what you're saying. Why not include the five sold stores contribution histories for years 2 through 10, but not year 1 in the 10-year look-back computation? Why am I saying that? Because that would seem to map the factual economic reality of the period in time in which super value held the five stores that were the subject of the 4204 transaction. Do you see what I mean? Yes. In other words, the sale of those stores occurred in September of 2018. The transaction that gives rise to the withdrawal liability is not that transaction. It's the transaction that happens in November of 2018. If the November 2018 event is what's giving rise to the withdrawal liability and you have to calculate the payment of that or the repayment plan of that, say, okay, account for the 4204 transaction. It most recently occurred in year 1. Looking back 10, do you see what I mean? But it's not there in years 2 through 9 because, in fact, super value was making contributions for the sold stores in years 2, year 3, year 4, etc. Why isn't that the best textual? I would say that under that, your proposed construction, Judge, 4204 does become completely thwarted because you end up with the same result in this case, which is the following, that the fund is receiving two streams of payments. Schnucks is continuing to provide contributions in connection with the sold assets, just as super value used to. And in addition, the fund is getting a second stream of payments. The fund says it's $1.1 million. We say it's $500,000. And that $600,000 difference is completely attributable to the contribution history of the assets that were picked up. This is helpful because I've had a hard time understanding economically the double recovery argument or the double recovery worry or concern or however everybody wants to phrase it. Because we know what, or I think we know, it's just a matter of how it gets apportioned and over what schedule it gets paid. But we know the top dollar, don't we? We know the upper limit of the unvested benefit liability here. So nobody's going to be paying more than that. But the true withdrawal liability amount is the amount that is paid. It's the amortizable. Over those 20 years. It's the amortizable amount over those 20 years. That's the true financial cost of the withdrawal liability and the true withdrawal liability amount. So is the point, is the reason you guys are choosing the words double recovery, quote unquote, is because you're saying, I guess this is what you're thinking, if you overpay on a 4219 calculation, so you overpay over the 20 years, that means the fund is receiving more than it's entitled to under 4219. It's receiving more than it's entitled to as a matter of withdrawal liability. And because it's receiving more, let's go ahead and call that double recovery. It's a windfall because, again, Schnucks, as the successor, is paying the contributions and needs to pay the contributions at substantially the same level that SuperValue did prior to the transaction. But that's by operation of 4204. That's by operation of 4204. And in addition to that, what the fund is obtaining is an additional stream of contributions that are really comprised of two parts. One part relates to the contribution history for the stores that were closed. And we have no objection to paying for that. But the second part, which happens to be the majority, that relates exclusively to the contribution history for the sold stores. And so, as a consequence, the fund, God bless it, it's getting double payments. That's the windfall. It's step one, though. It's step one. Yes. The accounting for the 4204 transactions took you from your prospective liability of $96 million down to $42.6 million, correct? I believe that's correct. And the substitute for that $50 million is the Schnucks contributions going forward, right? It is the Schnucks contributions going forward. But if super value had not been – yes, go ahead. I'm still having trouble understanding how that's a windfall or double payment then to when we're talking about the difference between $500,000 and $1.1 million in the annual 20-year payments. It's a double payment if you focus on things from the fund's perspective. Because what the fund – I'll be interested to hear what they have to say about that. What the fund was receiving before the sale and before the withdrawal was one level of a contribution stream. It's now getting two. And not only is it getting two, but the bulk of the second contribution stream is entirely based on the contribution history of the assets that were sold. And if I could go back just for a moment to the text in 4204 and 4201, I think it will buttress my argument that this is a double recovery that's in conflict, irreconcilable conflict with those two statutory sections. 4204 says if you engage in an asset sale that meets the conditions, there will be no withdrawal considered. 4201A says in the event of a withdrawal, the withdrawing employer has to pay withdrawal liability, and then subsection B sets forth the various steps in that equation. What has happened here is that a portion of the withdrawal liability payments are attributable to assets that were deemed immune from a withdrawal as a consequence of 4204, yet SuperValue is still paying a liability on those assets as part of its withdrawal liability. It's not supposed to pay any withdrawal liability under 4201 if there's been no withdrawal under 4204. But it's doing so, and it's putting the fund in a better position than it would have been in the absence of the 4204 transaction in the first place. And that's what I think was driving the concern of the Fourth Circuit in Borden, and that concern has full application to the determination of the scope of the language in 4219. Thank you, Mr. Miller. We will give you some rebuttal time. Oh, thank you. I appreciate it. Thank you. We'll now move Mr. Murphy to you. We've transformed into the D.C. Circuit here, so we're going to be a little flexible in terms of the amount of time. Sounds good. All right. Mr. Murphy, on behalf of the appellee. Good morning, Your Honors. I want to dive in right where Mr. Miller left off on the concern in Borden. So if you look at the discussion in Borden about the double recovery, the double recovery that Borden was concerned about was in the instance that the withdrawn employer and the purchaser, the two parties to the sale, are both paying withdrawal liability, that is the amount determined under 4211, on the same contribution stream, on the same contributions from the sold assets. That's undisputedly not at issue here. This case involves an assessment under 4211. Nobody's challenging, like, the application of Borden to get to the $42.6 million that, you know, the math dispute kind of starts from, right? So you've accepted that. The Pension Benefit Guarantee Corporation seems to agree with that. Correct, Your Honor. And I guess the point that I'm making is there's been a lot of discussion about double recovery this morning. That was the concern of Borden. That may be a double recovery. We could leave that argument for another day. The double recovery that Mr. Miller is advancing is not supported by the calculations that actually occurred here.  I'm with you to this extent. Double recovery is a mischosen term for a 4219 overpayment. Okay. What they're basically saying is you'd say, just get rid of the term double recovery. What he's saying is super value is overpaying, right? But there's no way it's a double recovery. I don't even know how mathematically you'd ever even get to the point of a double recovery. I mean, we would have to collect $96 million from super value as well as whatever that delta is between the two from Schnucks. So I agree with you, Your Honor. But as to the, so adopting your term, the overpayment, there is no overpayment. We followed the plain language of 4219. We considered super values contributions, contributions that's actually made to the fund in establishing that annual payment. And I would, I think it's important to recognize in this discussion, the purpose of 4219. 4219 does not establish liability. I understand that Mr. Miller is using kind of the more commonsensical liability and amount you owe another party. Common terms in ERISA don't often maintain their ordinary meaning. The liability that super value owes to the fund, it's share of unfunded vested benefits. That's all under 4211. The purpose of 4219 as recognized by the Supreme Court in the Schlitz case is to approximate historical contribution levels by the withdrawn employer. We accomplished that. That purpose is served by the calculation we engaged in this case. Super value is paying an annual payment that approximates amounts that it made historically under the mathematical formula defined by Congress. Can I ask, can I push you a little bit on this?  Okay. So here's the move that throws me off a little bit in there or the step, the portion of the 4219 calculation that throws me off. Okay. Is when we read 4219, it seems to me that the fund very understandably is saying, okay, we got the 10 year look back period in Roman one. You with me? I'm with you. Okay. So we got to go back 10 years to contribute to compute the contribution base units. And the question on the table is, should we be mindful of those four stores? I'm sorry, five stores that were sold in the 4204 transaction. And if the answer to that is yes, how so should the 10 year look back? And what the fund does is I understand it is it says, oh, okay. Yeah. We, we do think it's relevant. It's not irrelevant. The 4204 and it's relevant to this extent. The five stores are going to be out in the first five years of the look back period. Here's one through five. Okay. And in for contribution purpose, contribution unit in year six through 10. And then I think to myself, okay, why? So, okay. Because of 4204 B. Correct. Okay. That's the part that you got to help me with. So the best way to understand this, in my view is to look at it over the sequence of events. So at the point of the asset sale, two things happen. There's a safe Harbor from a withdrawal. No withdrawal occurs as a result of the sale. And then also an assignment occurs under 4204 B as your honor was just mentioning. Once that assignment occurs, it, it has happened. That is no longer super values contribution history. It is now schnooks contribution history. And we have to read 4204 B that way, because to read it otherwise would be to go down the path that Borden was concerned about. We would be holding both super value and schnooks primarily liable for that. That's why every nobody's fighting board. Right. Right. Right. So 4204 accomplishes the transfer of contribution history. And then at the point of the subsequent closure in November of 2018, we look at back 10 years from the, the year before the withdrawal to add another layer of complexity to this math. It's two different 10 year periods, but the 10 years leading to the year of the withdrawal. And we say, what are super values contributions over that period? Let's find the three consecutive year highest average contribution. We do with, we multiply that by the highest rate and you got your annual payment. Right. So that that's how I reconcile. And that's how I think that that's the only way to harmonize these three statutes and adhere to the plain language used in those statutes to do what super values asking for would require you to rewrite 4204 B to add an additional five year assignment. And I think it's worth noting that some of the case examples they've provided, including the central case from this court, deal with other safe harbors that do accomplish that transfer of contribution history. See, I think the plain language of, of Roman one lead if you, if you get really literal about it leads to the conclusion that you should include the contribution history as it, as it was as a matter of fact, in that 10 year look back period. So the five stores are in four years, one through five, and they're in for year six through 10. And I think that, Oh, go ahead. Okay. And so what I, and it's, you're, you got to advocate not, but I thought I read your brief to be saying, no, no, no. If we get that literal with it in for one through five and in through for six through 10 on the sold stores, you're, you're not in any way accounting for the 4204 transaction that occurred as a matter of fact, and therefore in the funds view, the lack of clarity, if you will, the silence ambiguity, the gap, it doesn't matter to me. What word you pick is resolved by resorting to 4204 B for direction. That's what it seems like the funds doing. So two points in response. First, I think it's notable that super value isn't arguing that had we considered that five year period, the annual payment would be different. So to me, it's kind of neither here nor there, but to direct, directly answer your question about is that I believe that is a reasonable reading of that statute. I think that because of how 4204 talks about the transfer and primary liability by the purchaser. And the fact that with respect to all the risks of statutes, we obviously have to harm interpret them harmoniously. It makes sense to the fund to exclude that five-year contribution history under the 4204 assignment. A follow-up question on that specifically to the PBGC letter. So the district court asks why the fund here excluded the sold stores units for the most recent five years. And I think, I believe it was you below said, you point to the PBGC letter, which the fund interpret as requiring these five-year reduction. If we end up agreeing with your interpretation of the entire statutory scheme, do we have to account for the PBGC letter? Or do we hold that the fund does not have to exclude for any of the five years? I don't believe you have to account for the PBGC letter because the PBGC letter was talking about the calculation of withdrawal liability under 4211. In other words, the total amount. So the PBGC says, when you're accounting for their share of unfunded vested benefits, they get credit for the fact that that contribution history under 4204, the five years, including the sale and the preceding four, are assigned to the purchaser. 4211 is a completely different calculation. Under 4219, we could have considered that five-year period. And to be honest, your honor, I'm not exactly sure what point in the transcript you're referring to, but I would imagine that my reflexive response is that, well, if the PBGC has said that 4204 transfer occurs and subsequent events take that into account, that we should do that in 4219 as well. I think that that's a reasonable way to read the statutes together. I don't think that's the only way to read the statutes. I think you certainly could literally read 4219. And again, I think that's consistent with the purpose of 4219, to establish a withdrawal liability payment, the annual payment at a level consistent with what the employer has done historically. Considering those five years would accomplish that purpose. Do you think you had to give SuperValue the benefit of the 4204 sale in step one? Yes. And I want to make sure I understand the statutory basis for that. What I would say, first of all, your honor, is I know SuperValue talks about withdrawal liability being calculated in two steps. We dispute that's the case. We think these are two different calculations. One is their share of unfunded vested benefits under 4211. But to your point, And then the second is what's the annual payment. That's what they treat as two steps as part of the same equation. I don't think that accounts for the purposes of each statute. One is to determine their share. The other is to determine how they pay it. In the Schlitz language, the charge and how you go about paying the charge. But the textual basis for excluding in the 4211 calculation, the five-year contribution history from sold assets is 4204B. And that's also what's subject to the PBGC letter that I was talking about with Judge Brennan. This court does not have a lot of opinions with flow charts. SENTRA is very complicated. What do you consider to be the holding of SENTRA? Or is it more than one holding? So I guess I would consider, and I'm going to contextualize it to this case because it is an extremely complicated fact pattern in that case. But essentially what the court was grappling with is the effect of various corporate reorganization in Grants. There was a drop-down sale and then there was also a stock sale. And I would not be able to tell you which entities were involved in which, but they were two different transactions, neither of which are at issue here. This is not a corporate restructuring where SuperValue moved its stores to a subsidiary. It's not a stock sale where a purchaser ordinarily, as the court recognized in SENTRA, takes on the contribution history of the predecessor entity. So I say all of that to say the holding in SENTRA was whether those events qualified for the safe harbor from withdrawal liability in 4218, what I refer to as the reorganization safe harbor. That safe harbor does include a complete transfer of contribution history to the purchaser, which is the opposite. Well, I shouldn't say the opposite, which is not what occurs under 4204. So my point in raising that is Congress knew if they wanted under 4204 to protect the seller from any possible future liability related to the contributions made on behalf of sold assets, they could have adopted the approach they did in 4218. They didn't. They limited it to the five-year period, leaving five years with the seller. Thank you. And your response to Judge Hamilton is that the textual hook, the better textual hook for the position on 4211 liability in connection with the 4204 sale, the partial or complete withdrawal liability, is 4204B is the answer to that question. 4204B because it tells you where the contribution history goes with respect to the purchased assets. Correct. And what I would add to that is it's specific about what contribution history goes and because it goes... For the five years? For those five years. And because it's specifically limited to those five years, the remainder stays with the seller. There would need to be some other provision of ERISA, and Mr. Miller has not cited it in the briefing. He's not going to argue it today. There is no provision of ERISA that assigns that pre-five-year contribution history to anyone else. It stays with super value. And I guess I would echo Judge Hamilton's comment earlier that when faced with such a complex statute, the fund adheres rigidly to the language, and we would ask the court to do the same. The only assignment that occurred in this case is that of the five-year contribution history of the sold assets. No other assignment occurred. So at the point the fund is determining the annual payment under 4219, it was entirely appropriate for it to consider the pre-five-year period as super value's contributions, because after all, super value paid those contributions to the fund. If there aren't any other questions, I would rest on their briefing. Very good. Thank you, Mr. Murphy. Why don't you come forward, Mr. Miller, and we'll put five minutes of rebuttal on, and whatever you would like to take. Thank you, Judge. I'd like to first go back to the question that you asked of APA League, Judge Hamilton, about 4211, and whether the fund felt compelled to interpret 4211 to give a complete exclusion of the contribution history. And the fund said yes. The operative language in 4211 is almost exactly the same as the operative language before the court in 4219. It's essentially the same statutory construction exercise. And indeed, although the Borden court was focused on the interplay between 4204 and 4211, the Borden court was interpreting that language, and it is our view that if this court were to affirm, it would be analytically and in terms of its statutory interpretation result creating a conflict with Borden. What exact language, just so we have it clear here, what exact language in 4211? Yeah, let me take a look at it. So the crucial language in 4211, and it's in a very lengthy subpart, 4211, C to, cap C, to Roman ad, says that the 4211 calculation in pertinent part is one in which the pension fund is going to examine amounts, quote, required to be contributed by the employer.  Forty-two. Yes. I'm trying to follow you closely. Yes. Exactly where, and I'm going to call it 1381, 4211, but exactly each step of the designation. The language that I just quoted to you is in 4211, small c, cap 2, of 2, cap C, to Roman ad. Sorry, C to C. Cap C, to Roman ad. Roman ad 1. Roman ad 2. Roman ad 2. It should say amounts required to be contributed by the employer. Sorry, I see capital I's and lowercase i's, and I want to make sure we're looking at the same language. I've got you at capital C. Yes. So at capital, I'm sorry, capital C, to Roman ad, and to Roman ad begins with a fraction. Okay. And then look at Roman numeral 1 after that. Okay, thank you. The numerator of which is the, quote, total amount required to be contributed under the plan by the employer. 4219 says, in pertinent part, that the pension fund is going to examine contribution-based units, quote, for which the employer had an obligation to contribute. And where are you in 4219? I'm in 4219, I believe, small c, 1. Cap C, Roman ad 1, Roman numeral 1. For which the employer had an obligation. Okay. Bingo. Okay. And the general legal concept that you're relying on is a presumption of consistent usage or a canon of in pari materia, because these are different statutes. They're different provisions, but they're very closely related, which is why we believe the in pari materia doctrine of statutory interpretation applies, because now I'll take you back to 4201, small b. 4201, small b, sets forth the various steps in determining the withdrawal liability amount. The first step is to determine the withdrawing employer's share of the unfunded vested benefits. Judge Brennan, that's the 4211 calculation. And then once you have that number, there are additional steps and adjustments, and a crucial additional step is to determine the amortization amount and determine whether it's going to be capped by 20 years or not. That's the calculation in 4219. So the 4211 calculation and the 4219 calculation are both part of an overall calculation of withdrawal liability. And the operative language that we just went through in these very technical subparts is essentially the same. And when the fund concedes that for 4211 purposes it has to exclude the contribution history, it's our position that as a matter of statutory construction, and in order to be consistent with these very closely related provisions that are part of the same overarching exercise, you've got to have the same construction of 4219 and eliminate the entirety of the contribution history. I want to make one more point. It relates, Judge Scudder, to what you asked of Fund Council and what I'll call the 4204B issue, because it's an important issue here. You asked whether Fund Council would concede that if you include both years 1 through 5 and years 6 through 10, that would frustrate 4204. And you said yes, and that is analytically correct. So you suggested the solution to the issue is 4204B and kind of splitting the years 1 through 5 and 6 through 10. So what I was doing with that is I very much think that the best reading, if you're going to be very, very literal, of 4219, the provision we're And to include them in years 6 through 10. But, and that would have the legal policy benefit of maximizing funding, avoiding shortfalls, furthering the 1980 amendments, and the downward spiral that Congress was worried about, all the stuff everybody knows here. But if you adopt that construction, the challenge that you run into is you have to square it with the way 4211 is being interpreted. A little bit of the point that you were making, 4211 is being interpreted for purposes of determining the unfunded vested liability number at the top level and what SHNUCS is responsible for by virtue of the 4204 transaction. In other words, if you read 4219 in isolation, you might think what I did about interpreting it, but we tend not to read statutes in isolation. You want to read them as a harmonious whole. So that's what I think is the difficulty about the case, is that 4219's plain language points you in a direction, but the direction doesn't make a whole lot of sense out of the statute. We agree with that, and we agree with your point that if you take this very literalistic reading... That's not what the fund did, it's not what anybody's doing. It's not what the fund did, and it gives no weight to 4204. But here's the point I want to make, and it's my crucial last point. 4204B, which talks about years 1 through 5 and 6 through 10, that text only addresses the following issue. What portion of the contribution history relating to the sold stores the buyer gets if the buyer is to later withdraw? That text says nothing about the years 1 through 5 as it relates to the seller's withdrawal liability if the seller first engages in a 4204 sale and thereafter, in connection with its residual operations, closes them. So that's why, Judge Scudder, we believe primarily that as a textual matter you can't use that language in 4204B to solve essentially, Judge Scudder, the issue that you rightfully raised about the problems of a literalistic interpretation of 4219. And instead, if you will, you've got to go the distance to give the interplay between 4204 and 4219 the proper effect by excluding the entire contribution history. Thank you. Thank you very much. These are excellent briefs, excellent arguments. Our thanks to Mr. Miller and Ms. Rodriguez, as well as to Mr. Murphy, Mr. Hanson, Mr. Carmel. Thank you for an outstanding presentation. Thank you very much. The case will be taken under advisement, and the Court will close its hearings for today.